UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| DISCOVERORG DATA, LLC,<br><br>   Plaintiff,<br><br>   v.<br><br>BITNINE GLOBAL, INC.,<br><br>   Defendant. | Case No. 19-CV-08098-LHK<br><br>**ORDER GRANTING IN PART AND DENYING IN PART MOTION FOR DEFAULT JUDGMENT**<br><br>PUBLIC REDACTED VERSION<br><br>Re: Dkt. No. 24 |

Plaintiff DiscoverOrg Data, LLC ("Plaintiff") moves for default judgment against Defendant Bitnine Global, Inc. ("Defendant"), ECF No. 24. Having considered Plaintiff's motion, the relevant law, and the record in this case, the Court hereby GRANTS IN PART and DENIES IN PART Plaintiff's motion for default judgment.

**I.    BACKGROUND**

   **A. Factual Background**

Plaintiff is a Delaware corporation with its principal place of business in Vancouver, Washington. ECF No. 1 ("Compl.") ¶ 1. Defendant is a California corporation with its principal place of business in Santa Clara, California. *Id.* ¶ 2.

Plaintiff manages a database of information which is maintained in interstate commerce

and used by businesses for their business-to-business sales, marketing, and recruiting. *Id*. ¶¶ 6, 17–18. Plaintiff's database includes business contact data, firmographic information, and other sales and marketing intelligence. *Id*. Plaintiff's database displays the selection, arrangement, orchestration, compilation, and presentation of the organizational charts, contacts, and other information collected by Plaintiff's analysts. *Id*. ¶ 7.

Plaintiff invests tens of millions of dollars to develop and maintain its database. *Id*. ¶ 7. For example, Plaintiff employs more than 1,200 employees, including 150 research analysts who focus on building, managing, and updating Plaintiff's database. *Id*. Plaintiff also has developed and purchased software, hardware, and other equipment to support its database. *Id*.

Plaintiff licenses access to its database to over 3,000 subscribers, including some of the world's largest technology companies. Watson Decl. ¶ 3. Each subscriber pays an annual fee and signs a restrictive license agreement with Plaintiff. Compl. ¶ 9. Subscribers access Plaintiff's database via a password-secured user interface. *Id*. ¶ 6. In addition to using password protection, Plaintiff also uses mail monitoring and list protection to secure its database. *Id*.

Plaintiff alleges that Defendant accessed Plaintiff's database without a paid subscription or Plaintiff's authorization beginning in March of 2019. *Id*. ¶ 10. Defendant accessed Plaintiff's database using the login credentials of two separate companies that were Plaintiff's subscribers. *Id*. ¶¶ 10, 21. Defendant then downloaded at least 273,000 records from Plaintiff's database and used those records for its sales and marketing efforts. *Id*. ¶ 11. For example, Defendant conducted an email marketing campaign to businesses whose contact information was in Plaintiff's database. *Id*.

Plaintiff captured traceable emails marketing Defendant's products and services using the accounts of two of Plaintiff's subscribers. Smith Decl. ¶ 3. These traceable emails are linked to the approximately 273,000 records that were downloaded. *Id*. The only way Defendant could send these traceable emails was to download data from Plaintiff's database using the accounts of two of Plaintiff's subscribers. *Id*.

**B. Procedural History**

On December 11, 2019, Plaintiff filed a complaint against Defendant that alleged six claims: (1) theft of trade secrets in violation of the Defend Trade Secrets Act ("DTSA"), 18 U.S.C. § 1832, *et seq.*; (2) misappropriation of trade secrets in violation of the California Uniform Trade Secrets Act ("CUTSA"), Cal. Civ. Code § 3426, *et seq.*; (3) misappropriation; (4) copyright infringement in violation of 17 U.S.C. § 501, *et seq.*, and circumvention of copyright systems in violation of 17 U.S.C. §§ 1201, 1203; (5) unjust enrichment; and (6) negligence. Compl. ¶¶ 16–50. Plaintiff sought actual damages, restitution, or a reasonable royalty on its first and second claims; compensatory damages on its third claim; actual or statutory damages on its fourth claim; restitution on its fifth claim; compensatory damages on its sixth claim; exemplary damages; declaratory relief; injunctive relief; and attorneys' fees. *Id.* at 11.

Defendant was served with Plaintiff's complaint on February 4, 2020. ECF No. 16. Plaintiff effected service by delivering a copy of the summons and complaint in person to Joshua Young Sun Bae, who was the head of Defendant's company. *Id.* Under the Federal Rules of Civil Procedure, Defendant was required to answer Plaintiff's complaint by February 25, 2020. *See* Fed. R. Civ. P. 12(a)(1)(A)(i) ("A defendant must serve an answer . . . within 21 days after being served with the summons and complaint . . . ."). Defendant missed that deadline. Accordingly, on March 10, 2020, Plaintiff moved for entry of default against Defendant. ECF No. 17. On March 12, 2020, the Clerk entered default against Defendant. ECF No. 19.

On March 25, 2020, Plaintiff filed a Case Management Statement, which stated that Plaintiff anticipated filing a motion for default judgment. ECF No. 20. On March 26, 2020, the Court ordered Plaintiff to file a motion for default judgment within 60 days. ECF No. 21. The Court noted that, in order to obtain the entry of a default judgment, Plaintiff was required to satisfy the factors enunciated in *Eitel v. McCool*, 782 F.2d 1470, 1471–72 (9th Cir. 1986); and establish personal and subject matter jurisdiction. *Id*.

On March 30, 2020, Mr. Young Sun Bae sent a letter to the Court stating that Mr. Young Sun Bae was no longer the head of Defendant's company and providing contact information for the new head of Defendant's company. ECF No. 22. Other than this letter, Defendant has not

1  made any filings in this case.

2  On May 26, 2020, Plaintiff filed the instant motion for default judgment. ECF No. 24.
3  Plaintiff also filed supporting declarations from Jie Smith, Senior Compliance Officer at
4  DiscoverOrg; Philip Watson, Vice President of Financial Planning and Analysis at DiscoverOrg;
5  and Darin M. Sands, counsel for DiscoverOrg in the instant case. Smith Decl.; Watson Decl.;
6  Sands Decl.

## II. LEGAL STANDARD

Pursuant to Federal Rule of Civil Procedure 55(b)(2), the Court may enter a default judgment when the Clerk, under Rule 55(a), has previously entered a party's default. Fed. R. Civ. P. 55(b). "The district court's decision whether to enter a default judgment is a discretionary one." *Aldabe v. Aldabe*, 616 F.2d 1089, 1092 (9th Cir. 1980). Once the Clerk enters default, all well-pleaded allegations regarding liability are taken as true, except with respect to damages. *See Fair Hous. of Marin v. Combs*, 285 F.3d 899, 906 (9th Cir. 2002) ("With respect to the determination of liability and the default judgment itself, the general rule is that well-pled allegations in the complaint regarding liability are deemed true."); *TeleVideo Sys. v. Heidenthal*, 826 F.2d 915, 917–18 (9th Cir. 1987) ("[U]pon default the factual allegations of the complaint, except those relating to the amount of damages, will be taken as true."); *Philip Morris USA v. Castworld Prods.*, 219 F.R.D. 494, 499 (C.D. Cal. 2003) ("[B]y defaulting, Defendant is deemed to have admitted the truth of Plaintiff's averments."). "In applying this discretionary standard, default judgments are more often granted than denied." *Philip Morris*, 219 F.R.D. at 498.

"Factors which may be considered by courts in exercising discretion as to the entry of a default judgment include: (1) the possibility of prejudice to the plaintiff, (2) the merits of plaintiff's substantive claim, (3) the sufficiency of the complaint, (4) the sum of money at stake in the action; (5) the possibility of a dispute concerning material facts; (6) whether the default was due to excusable neglect, and (7) the strong policy underlying the Federal Rules of Civil Procedure favoring decisions on the merits." *Eitel v. McCool*, 782 F.2d 1470, 1471–72 (9th Cir. 1986).

## III. DISCUSSION

### A. Jurisdiction

"When entry of judgment is sought against a party who has failed to plead or otherwise defend, a district court has an affirmative duty to look into its jurisdiction over both the subject matter and the parties. A judgment entered without personal jurisdiction over the parties is void." *In re Tuli*, 172 F.3d 707, 712 (9th Cir. 1999) (citations omitted). In order to avoid the entry of an order of default judgment that may subsequently be attacked as void, the Court must determine whether jurisdiction over the instant case exists. The Court begins with subject matter jurisdiction and then proceeds to personal jurisdiction.

#### 1. Subject Matter Jurisdiction

Here, Plaintiff brings this action, in part, pursuant to federal law. Plaintiff asserts claims for theft of trade secrets in violation of 18 U.S.C. § 1832, *et seq.*; copyright infringement in violation of 17 U.S.C. § 501, *et seq.*; and circumvention of copyright systems in violation of 17 U.S.C. §§ 1201, 1203. Compl. ¶¶ 16–24, 31–42. The Court has subject matter jurisdiction over Plaintiff's federal claims. *See* 28 U.S.C. § 1331 ("The district courts shall have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States.").

Plaintiff also brings related state law claims, including a claim for misappropriation of trade secrets in violation of Cal. Civ. Code § 3426, *et seq.*; a misappropriation claim; an unjust enrichment claim; and a negligence claim. Compl. ¶¶ 25–30, 43–50. Because these state law claims stem from the same underlying event as Plaintiff's federal claims — Defendant's unlawful use of information from Plaintiff's database — the Court has supplemental jurisdiction over Plaintiff's state law claims. *See* 28 U.S.C. § 1367(b) ("In any civil action of which the district courts have original jurisdiction, the district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution."); *DaimlerChrysler Corp. v. Cuno*, 547 U.S. 332, 351 (2006) ("[F]ederal-question jurisdiction over a

claim may authorize a federal court to exercise jurisdiction over state-law claims that may be viewed as part of the same case because they 'derive from a common nucleus of operative fact' as the federal claim.") (quoting *Mine Workers v. Gibbs*, 383 U.S. 715, 725 (1966)). Therefore, the Court has subject matter jurisdiction over all of Plaintiff's claims. The Court next considers whether it has personal jurisdiction.

### 2. Personal Jurisdiction

In the ordinary course of litigation, a defect in personal jurisdiction is either asserted or waived by a party. *See* Fed. R. Civ. P. 12(h)(1) (explaining that defects in personal jurisdiction are waived unless timely raised in a Rule 12 motion to dismiss or responsive pleading). Not so in the context of a motion for default judgment. Instead, "when a court is considering whether to enter a default judgment, it may dismiss an action *sua sponte* for lack of personal jurisdiction." *In re Tuli*, 172 F.3d at 712 (citations omitted).

"The party seeking to invoke the court's jurisdiction bears the burden of establishing that jurisdiction exists." *Scott v. Breeland*, 792 F.2d 925, 927 (9th Cir. 1986) (citing *Data Disc, Inc. v. Sys. Tech. Assocs.*, 557 F.2d 1280, 1285 (9th Cir. 1977)). "Personal jurisdiction over an out-of-state defendant is appropriate if the relevant state's long arm-statute permits the assertion of jurisdiction without violating federal due process." *Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797, 800–01 (9th Cir. 2004). California's long arm statute, Cal. Civ. Proc. Code § 410.10, is co-extensive with federal due process requirements, and therefore the jurisdictional analyses under California law and federal due process merge into one. *See* Cal. Civ. Proc. Code § 410.10 ("[A] court of this state may exercise jurisdiction on any basis not inconsistent with the Constitution of this state or of the United States."); *Mavrix Photo, Inc. v. Brand Techs., Inc.*, 647 F.3d 1218, 1223 (9th Cir. 2011) ("California's long-arm statute . . . is coextensive with federal due process requirements, so the jurisdictional analyses under state law and federal due process are the same.").

For a court to exercise personal jurisdiction over a defendant consistent with due process, that defendant must have "certain minimum contacts" with the relevant forum "such that the

maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'" *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945) (quoting *Milliken v. Meyer*, 311 U.S. 457, 463 (1940)). In addition, "the defendant's 'conduct and connection with the forum State' must be such that the defendant 'should reasonably anticipate being haled into court there.'" *Sher v. Johnson*, 911 F.2d 1357, 1361 (9th Cir. 1990) (quoting *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297 (1980)).

A court may exercise either general or specific jurisdiction over a defendant. *Ziegler v. Indian River Cty.*, 64 F.3d 470, 473 (9th Cir. 1995). General jurisdiction exists when a defendant is physically present or when a defendant's activities in the state are "continuous and systematic" such that the contacts approximate physical presence in the forum state. *See Schwarzenegger*, 374 F.3d at 801 (citation omitted). If general jurisdiction is inappropriate, a court may still exercise specific jurisdiction if the defendant "has sufficient contacts with the forum state in relation to the cause of action." *Sher*, 911 F.2d at 1361.

The Court may exercise general jurisdiction over a defendant who is domiciled in the forum state. *Panavision Int'l, L.P. v. Toeppen*, 141 F.3d 1316, 1320 (9th Cir. 1998). "With respect to a corporation, the place of incorporation and principal place of business are 'paradig[m] . . . bases for general jurisdiction.'" *Daimler AG v. Bauman*, 571 U.S. 117, 137 (2014) (quotation omitted). Defendant is a California corporation with its principal place of business in Santa Clara, California. Compl. ¶¶ 2–4. Because the Defendant is incorporated in and has its principal place of business in California, the Court may exercise general jurisdiction over the Defendant.

Additionally, for the Court to exercise personal jurisdiction over a defendant, the defendant must have been served in accordance with Federal Rule of Civil Procedure 4. *See Jackson v. Hayakawa*, 682 F.2d 1344, 1347 (9th Cir. 1982) ("Defendants must be served in accordance with Rule 4(d) of the Federal Rules of Civil Procedure, or there is no personal jurisdiction.") (footnote omitted).

Here, service on the Defendant was proper. The affidavit of service shows that Plaintiff effected service on February 4, 2020 by delivering a copy of the summons and complaint in

person to Mr. Young Sun Bae, who was the head of Defendant's company. *See* ECF No. 16 (affidavit of service).[1] Accordingly, the Court concludes that Plaintiff made proper service on the head of Defendant's company. Service was proper under the Federal Rules of Civil Procedure, which permits service of a corporate Defendant "by delivering a copy of the summons and of the complaint to an officer, a managing or general agent, or any other agent authorized by appointment or by law to receive service of process." Fed. R. Civ. P. 4(h)(1)(B). Therefore, the Court properly exercises personal jurisdiction over the Defendant.

### B. Whether Default Judgment is Proper

Having determined that the exercise of subject matter jurisdiction and personal jurisdiction over the Defendant is proper, the Court now turns to the *Eitel* factors to determine whether entry of default judgment against the Defendant is warranted.

#### 1. First *Eitel* Factor: Possibility of Prejudice

Under the first *Eitel* factor, the Court considers the possibility of prejudice to a plaintiff if default judgment is not entered against a defendant. "A plaintiff who is denied a default judgment and is subsequently left without any other recourse for recovery has a basis for establishing prejudice." *Adobe Sys. Inc. v. Acheampong*, 2019 WL 7212311, at *5 (N.D. Cal. Sept. 24, 2019), *report and recommendation adopted*, 2019 WL 7212310 (N.D. Cal. Oct. 10, 2019). Here, Plaintiff has established that Plaintiff will be prejudiced because the Defendant has not participated in this litigation and Plaintiff would be without recourse to recover for the damages caused by the Defendant. Therefore, the first *Eitel* factor weighs in favor of granting default judgment.

#### 2. Second and Third *Eitel* Factors: Merits of Plaintiffs' Substantive Claims and the Sufficiency of the Complaint

The second and third *Eitel* factors address the merits and sufficiency of Plaintiff's claims as pleaded in the Complaint. Courts often analyze these two factors together. *See Dr. JKL Ltd. v. HPC IT Educ. Ctr.*, 749 F. Supp. 2d 1038, 1048 (N.D. Cal. 2010) ("Under an *Eitel* analysis, the

---

[1] On March 30, 2020, nearly two months after he was served, Mr. Young Sun Bae sent a letter to the Court stating that Mr. Young Sun Bae was no longer the head of Defendant's company.

1  merits of plaintiff's substantive claims and the sufficiency of the complaint are often analyzed
2  together."). In its analysis of the second and third *Eitel* factors, the Court will accept as true all
3  well-pled allegations regarding liability. *See Fair Hous. of Marin*, 285 F.3d at 906 ("[T]he general
4  rule is that well-pled allegations in the complaint regarding liability are deemed true."). The Court
5  will therefore consider the merits of Plaintiff's claims and the sufficiency of the Complaint
6  together.

7  Plaintiff asserts six claims against Defendant: (1) theft of trade secrets in violation of 18
8  U.S.C. § 1832, *et seq*; (2) misappropriation of trade secrets in violation of CUTSA; (3)
9  misappropriation; (4) copyright infringement in violation of 17 U.S.C. § 501, *et seq.*, and
10 circumvention of copyright systems in violation of 17 U.S.C. §§ 1201, 1203; (5) unjust
11 enrichment; and (6) negligence. Compl. ¶¶ 16–50. The Court addresses each cause of action in
12 turn.

### a. Plaintiff Adequately Pleads Claim One and Claim Two for Misappropriation of Trade Secrets, but Does Not Adequately Plead Claim Three for Common Law Misappropriation.

15 A trade secret is "information that (1) derives independent economic value, actual or
16 potential, from not being generally known to, or readily ascertainable by other people who can
17 obtain economic value from its disclosure or use and (2) is subject to reasonable efforts to
18 maintain its secrecy." *WeRide Corp. v. Kun Huang*, 379 F. Supp. 3d 834, 845–46 (N.D. Cal. 2019)
19 (citing 18 U.S.C. § 1839(3); Cal. Civ. Code § 3426.1(d)). To state a claim for trade secret
20 misappropriation under the DTSA and the CUTSA, a plaintiff must allege that: "(1) the plaintiff
21 owned a trade secret; (2) the defendant misappropriated the trade secret; and (3) the defendant's
22 actions damaged the plaintiff." *Alta Devices, Inc. v. LG Electronics, Inc.*, 343 F. Supp. 3d 868,
23 877 (N.D. Cal. 2018) (quoting *Space Data Corp. v. X*, Case No. 16-CV-03260-BLF, 2017 WL
24 5013363, at *2 (N.D. Cal. Feb. 16, 2017)).

25 Here, Plaintiff has adequately alleged that Plaintiff owned a trade secret. First, Plaintiff
26 adequately alleges that Plaintiff's database contains information that contains independent
27 economic value from not being generally known to other people—specifically, Plaintiff's database

includes business contact data, firmographic information, and other sales and marketing intelligence used by businesses for their business-to-business sales, marketing, and recruiting. Compl. ¶¶ 6, 17–18. Plaintiff adequately alleges that the database's value depends on its exclusivity. *Id.* ¶ 9. Accordingly, Plaintiff makes reasonable efforts to maintain the security of the database, including using password protection, restrictive license agreements, mail monitoring, and list protection. *Id.* ¶ 9.

Furthermore, Plaintiff also sufficiently alleges that Defendant acquired the information in Plaintiff's database through improper means — specifically, by logging in using other subscribers' credentials without authorization from DiscoverOrg. *Id.* ¶ 20. Finally, Plaintiff sufficiently alleges that Defendant's action damaged Plaintiff through the lost opportunity to gain licensing revenue and the diminution of the market value of its proprietary information. *Id.* ¶ 23. Accordingly, Plaintiff adequately pleads a DTSA claim and a CUTSA claim.

However, the Court concludes that CUTSA preempts Plaintiff's third claim for common-law misappropriation. CUTSA "preempts common law claims that are 'based on the same nucleus of facts as the misappropriation of trade secrets claim for relief.'" *K.C. Multimedia, Inc. v. Bank of America Tech. & Operations, Inc.*, 171 Cal. App. 4th 939, 958–59 (Cal. Ct. App. 2009) (quoting *Digital Envoy, Inc. v. Google, Inc.*, 370 F. Supp. 2d 1025, 1035 (N.D. Cal. 2005). Plaintiff's common law misappropriation claim is based on the same nucleus of facts as Plaintiff's CUTSA claim. *Compare* Compl. ¶¶ 25–26 *with id*. ¶¶ 27–30 (alleging same facts in support of CUTSA and common law misappropriation claims). Accordingly, the Court denies default judgment on Plaintiff's common law misappropriation claim.

### b. Plaintiff Adequately Pleads Claim Four for Copyright Infringement and Circumvention of Copyright Systems.

To state a claim for copyright infringement, "two elements must be proven: (1) ownership of a valid copyright, and (2) copying of constituent elements of the work that are original." *Feist Publ'ns, Inc. v. Rural Tel. Serv. Co.*, 499 U.S. 340, 361 (1991). Plaintiff sufficiently alleges its ownership of a copyright that protects Plaintiff's database. Compl. ¶ 32 (providing the copyright

10
Case No. 19-CV-08098-LHK
ORDER GRANTING IN PART AND DENYING IN PART MOTION FOR DEFAULT JUDGMENT

1  registration number and date of registration); *see also id.* Exh. B (Report on the Filing or
2  Determination of an Action or Appeal Regarding a Copyright). Plaintiff also adequately alleges
3  that Defendant intentionally and knowingly made and used copies of Plaintiff's copyrighted
4  material without authorization or license from Plaintiff. *Id.* ¶ 34. Therefore, Plaintiff adequately
5  pleads a claim for copyright infringement.

Plaintiff also pleads a claim for circumvention of copyright protection systems. 17 U.S.C. § 1201(a) "prohibits the circumvention of any technological measure that effectively controls access to a protected work and grants copyright owners the right to enforce that prohibition." *MDY Industries, LLC v. Blizzard Entertainment, Inc.*, 629 F.3d 928, 944 (9th Cir. 2010). In the instant case, Plaintiff sufficiently alleges that Plaintiff owns a copyright that protects Plaintiff's database. Compl. ¶ 32. Plaintiff also sufficiently alleges that Plaintiff has imposed technological measures, including password protection, to control access to the protected work. *Id.* ¶ 40. Finally, Plaintiff alleges that Defendant circumvented the password protection to access Plaintiff's database. *Id.* ¶ 41. Thus, Plaintiff adequately pleads a claim for circumvention of copyright protection systems.

### c. Plaintiff Does Not Adequately Plead Claim Five for Unjust Enrichment.

"[I]n California, there is not a standalone cause of action for 'unjust enrichment,' which is synonymous with 'restitution.'" *Astiana v. Hain Celestial Grp., Inc.*, 783 F.3d 753, 762 (9th Cir. 2015) (quoting *Durell v. Sharp Healthcare*, 183 Cal. App. 4th 1350, 1370 (Cal. Ct. App. 2010)). Thus, "this Court, as well as other federal district courts, have previously determined that 'there is no cause of action for unjust enrichment under California law.'" *Low v. LinkedIn Corp.*, 900 F. Supp. 2d 1010, 1031 (N.D. Cal. 2012) (collecting cases dismissing unjust enrichment claims) (quotation omitted). Furthermore, Plaintiff acknowledges that Plaintiff did not have access to discovery in order to prove unjust enrichment. Mot. at 5. Accordingly, the Court denies Plaintiff's motion for default judgment on this claim.

### d. Plaintiff Does Not Adequately Plead Claim Six for Negligence.

"Under California law, 'the elements of negligence are: (1) defendant's obligation to conform to a certain standard of conduct for the protection of others against unreasonable risks

(duty); (2) failure to conform to that standard (breach of the duty); (3) a reasonably close connection between the defendant's conduct and resulting injuries (proximate cause); and (4) actual loss (damages).'" *Corales v. Bennett*, 567 F.3d 554, 572 (9th Cir. 2009) (quoting *McGarry v. Sax*, 158 Cal. App. 4th 983, 994 (Cal. Ct. App. 2008)). In the instant motion, Plaintiff argues that "Bitnine's failures caused DiscoverOrg to lose revenue and reduced the market value of its Database." Mot. at 12. However, Plaintiff also acknowledges that Plaintiff did not have access to discovery in order to prove actual loss. Mot. at 5. Accordingly, the Court denies Plaintiff's motion for default judgment as to Plaintiff's negligence claim.

Because the Court concludes that Plaintiff has adequately stated a DTSA claim, a CUTSA claim, and a copyright claim, the second and third *Eitel* factors weigh in favor of granting default judgment as to these three claims.

### 3. Fourth *Eitel* Factor: The Amount of Money at Stake

Under the fourth *Eitel* factor, "the court must consider the amount of money at stake in relation to the seriousness of Defendant's conduct." *PepsiCo Inc. v. Cal Sec. Cans*, 238 F. Supp. 2d 1172, 1176 (C.D. Cal. 2002); *see also Eitel*, 782 F.2d at 1471-72. "The Court considers Plaintiff's declarations, calculations, and other documentation of damages in determining if the amount at stake is reasonable." *Trung Giang Corp. v. Twinstar Tea Corp.*, 2007 WL 1545173, at *12 (N.D. Cal. May 29, 2007).

Default judgment is disfavored when a large amount of money is involved or is unreasonable in light of the potential loss caused by the defendant's actions. *Id.* Nonetheless, courts have found that this factor "presents no barrier to default judgment" as long as the potential damages were "proportional to the harm alleged." *See Liu Hongwei v. Velocity V Ltd.*, 2018 WL 3414053, at *8 (C.D. Cal. July 11, 2018) (finding that a request of $4,000,000 was justified); *United States v. Roof Guard Roofing Co.*, 2017 WL 6994215, at *3 (N.D. Cal. Dec. 14, 2017) (holding that a request "totaling over a million dollars" was reasonable because the tax debt was substantiated with proof provided by the government).

Here, Plaintiff seeks to recover a total of $███████ in actual and exemplary damages, as

well as $5,522.36 in attorneys' fees and costs. ECF No. 24 at 12. The Court holds that this request is reasonable and proportional to the numerous federal and state law violations set forth in Plaintiff's complaint. *See* Section I(C)(3), *infra* (discussing why actual damages, exemplary damages, and attorneys' fees are appropriate in this case). Therefore, the fourth *Eitel* factor weighs in favor of default judgment.

### 4. Fifth and Sixth *Eitel* Factors: Potential Disputes of Material Fact and Excusable Neglect

The fifth *Eitel* factor considers the possibility of disputes as to any material facts in the case. Where a defendant fails to appear in an action, a court can infer "the absence of the possibility of a dispute concerning material facts." *Solaria Corp. v. T.S. Energie e Risorse, S.R.I.*, 2014 WL 7205114, at *3 (N.D. Cal. Dec. 17, 2014). Defendant has failed to make an appearance in this case. The Court therefore takes the allegations in the Complaint as true and holds that there is no dispute over material facts. *Fair Hous. of Marin*, 285 F.3d at 906. Furthermore, the evidence provided by Plaintiff establishes that Defendant gained access to Plaintiff's database without authorization, downloaded at least 273,000 records, and used those records to conduct an email marketing campaign. Smith Decl. ¶¶ 3–4.

The sixth *Eitel* factor considers whether failure to appear was the result of excusable neglect. A summons was issued for Defendant on December 20, 2019. ECF No. 11. An affidavit of service shows that Mr. Young Sun Bae, the head of Defendant's company, was served in person on February 4, 2020. ECF No. 16. In addition to effecting service, Plaintiff's counsel states that he emailed Defendant's counsel informing him of the default and Plaintiff's intent to move for default judgment. Sands Decl. ¶ 7. Nonetheless, Defendant has not made an appearance nor challenged the entry of default. Based on this record, nothing before the Court suggests that Defendant's failure to appear or litigate this case was the result of excusable neglect. In these circumstances, Defendant has no excusable reason to fail to appear in the instant case.

### 5. Seventh *Eitel* Factor: Policy Favoring Decision on the Merits

Although the policy favoring decision on the merits generally weighs strongly against

awarding default judgment, district courts have regularly held that this policy, standing alone, is not dispositive, especially where a defendant fails to appear or defend itself. *See, e.g.*, *Craigslist, Inc. v. Naturemarket, Inc.*, 694 F. Supp. 2d 1039, 1061 (N.D. Cal. 2010); *Hernandez v. Martinez*, 2014 WL 3962647, at *9 (N.D. Cal. Aug. 13, 2014). Although Defendant was properly served, Defendant has not made an appearance nor challenged the entry of default. Thus, the likelihood of the case proceeding to a resolution on the merits is unlikely. Accordingly, the Court finds that this factor slightly weighs against default judgment.

### 6. Balancing of *Eitel* Factors

In sum, the following six *Eitel* factors weigh in favor of default judgment as to Plaintiff's DTSA claim, CUTSA claim, and copyright claim: (1) the possibility of prejudice, (2) the merits of Plaintiff's substantive claims, (3) the sufficiency of the complaint, (4) the sum of money at stake in the action, (5) the possibility of a dispute concerning material facts, and (6) excusable neglect. *See Eitel*, 782 F.2d at 1471–72. The last factor, the policy favoring decisions on the merits, weighs slightly against default judgment. The Court concludes that the last *Eitel* factor is outweighed by the other six factors that favor default judgment as to these three claims. *See, e.g.*, *Hernandez*, 2014 WL 3962647, at *9 (seventh *Eitel* factor outweighed by remaining six factors where defendants failed to appear for over a year and a half prior to the default judgment). Thus, the Court concludes that default judgment as to Plaintiff's DTSA claim, CUTSA claim, and copyright claim is appropriate.

### C. Damages

A plaintiff seeking default judgment "must also prove all damages sought in the complaint." *Dr. JKL Ltd.*, 749 F. Supp. 2d at 1046 (citing *Philip Morris USA, Inc. v. Castworld Prods., Inc.*, 219 F.R.D. 494, 498 (C.D. Cal. 2003)). Federal Rule of Civil Procedure 55 does not require the Court to conduct a hearing on damages, as long as it ensures that there is an evidentiary basis for the damages awarded in the default judgment. *See Action SA v. Marc Rich & Co.*, 951 F.2d 504, 508 (2d Cir. 1991), *abrogated on other grounds as recognized by Day Spring Enters., Inc. v. LMC Int'l, Inc.*, 2004 WL 2191568 (W.D.N.Y. Sept. 24, 2004).

In the instant case, Plaintiff seeks only actual damages, exemplary damages, and attorneys' fees and costs stemming from Plaintiff's DTSA and CUTSA claims. Mot. at 5–8. Plaintiff does not seek damages related to any of Plaintiff's other claims. The Court addresses in turn each measure of damages sought by Plaintiff.

**1. Actual Damages**

To compensate Plaintiff for Plaintiff's actual damages, Plaintiff seeks a reasonable royalty of $▮ for Defendant's misappropriation of trade secrets. The DTSA permits an award of "a reasonable royalty for the misappropriator's unauthorized disclosure or use of the trade secret" "in lieu of damages measured by any other methods." 18 U.S.C. § 1836(b)(3)(B)(ii). The CUTSA permits the court to "order payment of a reasonable royalty" "[i]f neither damages nor unjust enrichment caused by misappropriation are provable." Cal. Civ. Code § 3426.3(b). Plaintiff acknowledges that a reasonable royalty is appropriate here because Plaintiff did not have access to discovery in order to prove actual loss or unjust enrichment. Mot. at 5.

To determine the amount of a reasonable royalty, the court "calculates what the parties would have agreed to as a fair licensing price at the time that the misappropriation occurred." *Alt. Inertial Sys. v. Condor Pac. Indus. of Ca., Inc.*, Case No. 2:08-cv-02947-CAS, 2015 WL 3825318, at *10 (quoting *Ajaxo Inc. v. E*Trade Financial Corp.*, 187 Cal. App. 4th 1295, 1308 (Cal. Ct. App. 2010)). In determining what the parties would have agreed to as a fair licensing price, the court should consider factors including: (1) the price past purchasers may have paid; (2) the total value of the secret to the plaintiff, including the plaintiff's development costs and the importance of the secret to the plaintiff's business; and (3) the nature and extent of the use the defendant intended for the secret. *Alt. Inertial Sys.*, 2015 WL 3825318, at *10 (citing *University Computing Co. v. Lykes-Youngstown Corp.*, 504 F.2d 518, 539 (5th Cir. 1974)). The Court examines each of these factors in turn.

First, past purchasers would have paid a reasonable royalty of $▮ for a subscription that would have afforded them the same access that Defendant got. Defendant accessed Plaintiff's database without authorization using the accounts of two of Plaintiff's subscribers. In order for

Defendant to get access to a subscription that was comparable to these two accounts, Defendant would have had to pay a minimum list price of $ ▒ per year. Smith Decl. ¶ 7. Accordingly, $▒ represents a calculation of what the parties would have agreed to as a fair licensing price at the time the misappropriation occurred.

A royalty amount of $▒ is also supported by the total value of the secrets to the Plaintiff, including the Plaintiff's development costs and the importance of the secret to the Plaintiff's business. Plaintiff alleges that Plaintiff spends tens of millions of dollars each year in developing and maintaining its database. Compl. ¶ 7. Moreover, Plaintiff alleges that the secret nature of the information is vital to its business because, if the information in Plaintiff's database were freely accessible, no subscribers would pay fees to access Plaintiff's database. *Id*. ¶ 9. Accordingly, a royalty amount of $▒ is supported by the total value of the secrets to the Plaintiff.

Finally, a royalty amount of $▒ is supported by the nature and extent of the use the defendant intended for the secret. Plaintiff alleges that Defendant downloaded at least 273,000 records from Plaintiff's database and used the information for sales and marketing purposes, including by conducting an email marketing campaign. *Id*. ¶ 11. Although Defendant's nonparticipation makes it impossible for the Court to determine how much Defendant profited from the use of information from Plaintiff's database, the facts alleged by Plaintiff demonstrate that Defendant extensively used Plaintiff's database, downloading hundreds of thousands of records and using them for its sales and marketing purposes. Thus, a royalty amount of $▒ is justified.

**2. Exemplary Damages**

Plaintiff also seeks exemplary damages of $▒ for Defendant's misappropriation of trade secrets. Both the DTSA and the CUTSA authorizes an award of exemplary damages in an amount not more than two times the amount of actual damages if the trade secret is willfully and maliciously misappropriated. 18 U.S.C. § 1836(b)(3)(C); Cal. Civ. Code § 3426.3(c).

In the instant case, Plaintiff adequately pleads that Defendant's misappropriation of

16

Plaintiff's trade secrets was willful and malicious. Plaintiff's database requires a password for access. Smith Decl. ¶ 3. However, instead of buying its own valid subscription, Defendant used the login credentials of other subscribers. Compl. ¶ 20. Defendant then downloaded hundreds of thousands of records from the database, and used those records for its own sales and marketing purposes, including by conducting an email marketing campaign. *Id.* ¶ 11. Thus, Defendant acted willfully and maliciously in misappropriating Plaintiff's trade secrets.

Because Defendant engaged in willful and malicious misappropriation, the Court can award exemplary damages of up to two times the amount of actual damages. In the instant case, the Court has awarded a reasonable royalty of $▓▓▓▓, so the Court can award exemplary damages of $▓▓▓▓.

The Court concludes that exemplary damages of $▓▓▓▓ is justified in this case. Plaintiff adequately pleads that exemplary damages are justified in this instance because of the need to deter similar misconduct in the future. Some unauthorized use of Plaintiff's database goes undetected, and some instances of unauthorized use are too difficult to prove. Smith Decl. ¶ 5. Because of the probability of non-detection, a higher amount of damages is necessary to deter similar misconduct. Therefore, the Court awards $▓▓▓▓ in exemplary damages.

### 3. Attorneys' Fees and Costs

Finally, Plaintiff seeks attorneys' fees of $4,570.65 and litigation costs of $951.71. The DTSA and CUTSA authorize an award of reasonable attorneys' fees to the prevailing party if the trade secret was willfully and maliciously appropriated. 18 U.S.C. § 1836(b)(3)(C); Cal. Civ. Code § 3426.4. As explained above, Plaintiff has adequately pleaded that Defendant willfully and maliciously misappropriated Plaintiff's trade secret. *See* p. 16–17, *supra*. Thus, the Court may award attorneys' fees to Plaintiff.

To calculate attorneys' fees, courts multiply the number of hours reasonably expended on the litigation by the reasonable hourly rate. *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983). The Court concludes that the hourly rates of Plaintiff's counsel is reasonable. Sands Decl. ¶ 3. Moreover, the Court concludes that the hours Plaintiff's counsel spent on the litigation were

reasonably expended. *See* Sands Decl. Exh. B (documentation of billing records of counsel). Finally, the Court concludes that the litigation costs incurred were reasonable. *Id.* Exh. A (documentation of litigation costs). The Court awards attorneys' fees of $4,570.65 and litigation costs of $951.71.

## IV.   CONCLUSION

For the foregoing reasons, the Court GRANTS Plaintiff's motion for default judgment as to the following claims:

- Claim 1 for misappropriation of trade secrets in violation of DTSA
- Claim 2 for misappropriation of trade secrets in violation of CUTSA, and
- Claim 4 for copyright infringement and circumvention of copyright systems.

The Court DENIES Plaintiff's motion for default judgment as to the following claims:

- Claim 3 for common law misappropriation,
- Claim 5 for unjust enrichment, and
- Claim 6 for negligence.

The Court awards Plaintiff $_____ in actual damages, $_____ in exemplary damages, $4,570.65 in attorneys' fees, and $951.71 in litigation costs.

**IT IS SO ORDERED.**

Dated: November 9, 2020

*Lucy H. Koh*
_____
LUCY H. KOH
United States District Judge